UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In Re:

Ryan M. Pogozalski,

     Debtor.

Chapter 7
Case No.  24-14587-CLC

_____/

Stock Yards Bank & Trust Company,

     Plaintiff,

v.

Ryan M. Pogozalski,

     Defendant.

_____

Adv. No.

### <u>COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT</u>

     Plaintiff, Stock Yards Bank & Trust Company, by counsel, pursuant to 11 U.S.C. § 523(a)(2)(B) and Rules 4007(a) & 7001(6), sues Defendant, Ryan M. Pogozalski, to determine the dischargeability of a debt owing to Plaintiff, stating:

     1.     This is an action to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(B).

     2.     Defendant, Ryan M. Pogozalski (the "**Debtor**") is an individual residing in Miami-Dade County, Florida, who filed a voluntary petition under chapter 7 of the Bankruptcy Code on May 10, 2024 (the "**Petition Date**"), and is subject to the jurisdiction of this Court.

3.      Plaintiff is a creditor of the Debtor as the term "creditor" is defined under 11 U.S.C. § 101(10).

4.      This Court possesses jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(I).

5.      Pursuant to 28 U.S.C. § 1409(a), venue is proper in the United States Bankruptcy Court, Southern District of Florida, Miami Division, because the Debtor resides in, and the petition was filed by the Debtor in, the United States Bankruptcy Court, Southern District of Florida, Miami Division.

6.      At all material times, Debtor was the president of Servall Electric Company, Inc. ("**Servall**") and represented himself to Plaintiff as a person who was very knowledgeable and familiar with the Servall's financial situation.

### Debtor's False Representations
### Respecting His and Servall's Financial Condition

7.      Plaintiff's claim against Debtor arises out of several commercial loans and a credit card agreement whereby Debtor and Servall borrowed money from Plaintiff.

8.      Debtor knowingly and intentionally made false, fraudulent, and misleading representations to Plaintiff with the specific intent that Plaintiff rely on the same in extending credit to Servall and the Debtor.

9.      More specifically, to induce Plaintiff to make the Credit Facilities (as defined below), Debtor delivered to Plaintiff a personal financial statement during

March 2022, in which he falsely overstated the value of his assets and completely disregarded her liabilities.

10.     For instance, Debtor falsely claimed in the March 2022 personal financial statement to have a net worth of over $16,646,000.00.  Yet, unbeknownst to Plaintiff, Debtor had substantial debts that were not disclosed in the March 2022 personal financial statement.

11.     Additionally, Debtor knew Servall was rapidly spiraling down the path of financial ruin and could not be worth anywhere close to the purported value claimed in the March 2022 personal financial statement provided to Plaintiff.

12.     As a further inducement for Plaintiff to make the Credit Facilities, Debtor provided Plaintiff with Servall's First Quarter 2022 financial information, which reflected a profit of over Eight Hundred Forty-Five Thousand Dollars ($845,000.00).  However, Debtor knew or should have known Servall was incapable of enforcing basic financial cost controls and that the corporate credit card was being misused for personal expenses.  As such, Debtor knew or should have known that the First Quarter financial information provided to Plaintiff was unreliable and inaccurate.

13.     By presenting the March 2022 personal financial statement and Servall's First Quarter financial information to Plaintiff, Debtor represented that Servall was a profitable, well-run company with financial controls in place, but those representations were false.

14.     Yet, by the time Servall entered into the May 2022 loans with Plaintiff, Debtor knew or should have known that the financial information provided to Plaintiff was false and not reliable, because: (i) the expenses were understated, (ii) the income was overstated, and (iii) it is believed they were no longer in good standing with their former lender, Northside Bank and Trust, and needed to refinance their loan with North Side Bank, which precipitated the request for a loan from Plaintiff.

15.     Debtor made each of these representations with the intent to deceive Plaintiff loans to Servall.

**The Credit Facilities**

16.     On May 9, 2022, Servall entered a Three Million Dollar credit facility with Plaintiff, which was documented through a promissory note, a business loan agreement, and a security agreement, among other documents ("**Credit Facility 1**"). Debtor personally guaranteed Credit Facility 1.

17.     On May 11, 2022, in reliance upon Debtor's representations, Plaintiff and Servall entered into a Five Hundred Thousand Dollar ($500,000.00) credit facility which included a business credit card agreement ("**Credit Facility 2**") in favor of Plaintiff, whereby Plaintiff, as holder and issuer, provided Servall with a corporate credit card with an available credit limit of Five Hundred Thousand Dollars ($500,000.00) (the "**Credit Card**").  Again, Debtor personally guaranteed Credit Facility 2.

18.     And on September 8, 2022, again in reliance upon Debtor's representations, Servall entered in a third credit facility with Plaitniff in the amount

of Sixty Thousand One Eighty-Seven and 51/100 Dollars ($60,187.51), that included a promissory note, a business loan agreement, and a security agreement.  Debtor also personally guaranteed Credit Facility 3.

19.     Finally, on July 12, 2023, in reliance upon Debtor's representations, Servall entered into a Five Hundred Thousand Dollars ($500,000.00) credit facility with Plaintiff that included a promissory note, and a business loan agreement, among other documents ("**Credit Facility 4**" and, together with Credit Facility 1, Credit Facility 2, and Credit Facility 3, the "**Credit Facilities**").  Again, Debtor personally guaranteed Credit Facility 4.

### The Credit Facilities Are Non-Dischargeable

20.     As detailed above, Debtor represented and warranted to Plaintiff that the information contained in the 2022 personal financial statement and Servall's First Quarter 2022 financial information was correct and accurate, but he knew the information was false.

21.     Plaintiff entered into the Credit Facilities with Servall in reliance of the 2022 personal financial statement and Servall's First Quarter 2022 financial information.

22.     But the representations Debtor made to Plaintiff in Servall's First Quarter 2022 financial information were all false and known to be false at the time communicated to Plaintiff.

23.     Debtor made these false representations to deceive and induce Plaintiff into loaning money to Servall in connection with the Credit Facilties.

24.     The omissions and/or false representations and warranties that Debtor made were material misstatements that were made with actual malice.

25.     Plaintiff reasonably and justifiably relied upon all of Debtor's fraudulent and malicious misrepresentations and material omissions in entering into he Credit Facilities with Servall.

26.     Under these circumstances, the debt owed to Plaintiff is non-dischargeable as one obtained by use of a statement in writing (i) that is materially false; (ii) respecting both the Debtor's and Servall's financial condition; (iii) on which Plaintiff reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

WHEREFORE, Plaintiff, Stock Yards Bank & Trust Company, prays this Court enter judgment pursuant to 11 U.S.C. § 523(a)(2)(B) determining the Credit Facilities to be non-dischargeable; awarding Plaintiff its damages, together with an award of costs, attorneys' fees, and interest; and such other and further relief as the Court deems just and proper under the circumstances.

DATED: August 12, 2024.

GRAYROBINSON, P.A.
*Attorneys for Stock Yards Bank & Trust Company*
1404 Dean Street, Suite 300
Fort Myers, Florida 33901
Phone: 239.254.8460
Email: luis.rivera@gray-robinson.com


By: /s/ Luis E. Rivera II
    Luis E. Rivera, II
    Florida Bar No. 0013913